UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN CARLO FREE,

                    Petitioner,                    Case No. C19-1551-TSZ-MAT

        v.

JAMES KEY,                                        REPORT AND RECOMMENDATION

                    Respondent.

INTRODUCTION

Petitioner John Carlo Free proceeds pro se and *in forma pauperis* in this 28 U.S.C. § 2254 habeas corpus matter.  In 2009, petitioner pled guilty to two counts of first-degree child rape.  He received a special sexual offender sentencing alternative (SSOSA) sentence of 131 months to life, suspended upon serving six-month and five-month consecutive confinement terms and undergoing three years of sex offender treatment.  (Dkt. 12, Ex. 1.)  In October 2014, King County Superior Court revoked the suspended sentence following a SSOSA violation hearing.  (*Id*., Ex. 2.)

Petitioner here raises challenges to the revocation order and his sentence.  (Dkt. 8.) Respondent submitted an answer, along with relevant portions of the state court record.  (Dkts. 11

REPORT AND RECOMMENDATION - 1

1    & 12.) Petitioner filed a reply. (Dkt. 21.) The parties also submitted supplemental briefing at the

2    Court's request. (Dkts. 22-23, 33.) Now, having considered the petition, answer, record, and all

3    other briefing, the Court recommends the habeas petition be DENIED and this case DISMISSED.

4    <u>BACKGROUND</u>

5    The Washington Court of Appeals summarized the facts relevant to this proceeding as

6    follows:

7    In August 2009, in a negotiated plea deal, Free pleaded
     guilty to two counts of first degree rape of a child for crimes he
8    committed against his nephew. The State agreed to consider
     recommending a SSOSA depending on the results of a sexual
9    deviancy evaluation.

10   Free underwent a polygraph and had a sexual deviancy
     evaluation with William Satoran, a certified sex offender treatment
11   provider (CSOTP). Free admitted that between the ages of 35 and
     38, he viewed child pornography 50 to 100 times and masturbated.
12   while viewing. Free also admitted that he obtained both still photo
     and video pornography from the internet, and that he would
13   masturbate while viewing. Overall, Satoran determined Free
     appeared eligible for a SSOSA "in that he is a manageable danger
14   to be at large providing he is in treatment with a CSOTP." Satoran
     recommended Free be required to enter, and successfully complete,
15   a three-year specialized sexual deviancy treatment program.
     Recommended conditions included maintaining full time
16   employment and the requirement to "abide by all rules of his
     treatment program and probation, as well as any other rules his
17   therapist and probation counselor deem appropriate."

18   Free was sentenced to 131 months to life in prison, with all
     but 11 months suspended. The court ordered Free to engage in sex
19   offender treatment with Satoran for three years, required Free to
     abide by all conditions of treatment, to follow all of Satoran's
20   treatment recommendations, and to comply with all conditions
     imposed by the Department of Corrections (DOC).

21
     On December 30, 2009, Free signed a DOC Conditions,
22   Requirements, and Instructions document indicating that he
     understood the conditions of community custody, including that he
23   was to follow Satoran's recommended treatment plan. On February
     8, 2010, Free signed a treatment contract with Satoran that provided

REPORT AND RECOMMENDATION - 2

the rules of the program along with the warning that any violation was grounds for termination. The contract specifically stated that "[h]onesty is demanded by the Program." The contract also required clients to attend 100 percent of their scheduled therapy sessions, complete all "readings and other assignments within prescribed time limits," and to "participate actively in group therapy." The contract prohibited clients from using "pornography in any form" and from using the internet "unless they have special permission from the [Community Corrections Officer (CCO)] and treatment provider and are using porn filters."

In May 2010, Free's niece reported that he had molested her on multiple occasions starting when she was seven or eight years old. Free entered into a negotiated plea of guilty to a reduced charge of felony communication with a minor for immoral purposes and was sentenced to 24 months, with his SSOSA deferred until his release from custody.

Free was released from prison in April 2012 and resumed treatment with Satoran on June 5, 2012. In his March 2013 SSOSA progress report, Satoran noted several issues with Free over the proceeding months, such as accessing the internet contrary to treatment rules, missing sessions, remaining unemployed, and obfuscation. Satoran concluded "Despite the rule violation I am not recommending a SSOSA revocation hearing at this time. However, due to the violation and the missed sessions this following month he bears watching and will need to show significant improvement over the next 3 months." In July 2013, Satoran reported that Free was not complying with his homework assignments or his requirements for his treatment group and that his participation was "not up to group standards."

On November 22, 2013, Free was suspended from Satoran's treatment program.  The DOC filed a notice of violation of Free's SSOSA. When the CCO contacted Satoran, Satoran stated the defendant had been suspended for nonpayment of fees, for not completing the homework, and for not actively participating in group sessions. Free had quit his job, disregarding group advice, saying it was "a minimum wage, bottom of the barrel job." Free was not actively participating in job search activities.

Satoran reinstated Free in December 2013, but the problems continued. Free was not consistent in turning in his weekly impulse charts, mood logs, or weekly checklists. He was still not in compliance with his homework, remained out of work, and owed $1500 in fees. Satoran suspended Free again on January 7, 2014,

REPORT AND RECOMMENDATION - 3

and then terminated him from the treatment program on January 27, 2015.

The DOC filed a second violation report specifically noting the termination from Satoran's group and Free's growing hostility with his CCO. The CCO recommended that the court evaluate whether a SSOSA sentence is appropriate for Free. Free was taken into custody pending a revocation hearing.

Free's counsel referred him to Dr. Myrna Pinedo, who reviewed Free's evaluation, progress reports, polygraph, and case file, then interviewed Free before agreeing to allow him to join her treatment program for a 90-day probationary period.

A violation hearing was held and the defendant admitted to violating his SSOSA by failing to make reasonable progress in treatment and being terminated from the required treatment program. Free was granted a 90-day probationary period for reentry into treatment with Dr. Pinedo. Agreed conditions of the probation included: (1) enrolling in Dr. Pinedo's treatment program, (2) complying with all conditions of treatment and supervision "without complaint, negotiation, or argument," (3) seeking and maintaining employment, (4) completing all homework assignments, and (5) not possessing, using, accessing or viewing any sexually explicit or erotic material. By agreeing to the terms of probation, Free understood:

> that if he does not meet the standards of behavior and participation of Dr. Pinedo's program, has one unexcused absence from a treatment session, misses one payment, does not present homework assignments on the day that they are due, or commits any violation of treatment or supervision, that he will be immediately terminated from treatment, the Court will immediately order a no-bail bench warrant for defendant's arrest, and the State will recommend revocation of his suspended sentence. <u>Defendant further understands and has been given clear and explicit notice from the Court that 100% strict compliance with all conditions noted above is required.</u>

The court ordered Free to serve 60 days in jail and then enter into the 90-day probationary period with Dr. Pinedo. Free was released from confinement in July 2014, and reported to Dr. Pinedo's treatment program. Dr. Pinedo informed Free that her program had stringent requirements that were strictly enforced, and any violation of the rules set by the program or the DOC would

REPORT AND RECOMMENDATION - 4

result in immediate termination. Dr. Pinedo believed the strict boundaries may make it more likely for Free to be successful in the program. Free agreed to Dr. Pinedo's treatment program rules. In addition to the written treatment program rules, Dr. Pinedo testified at the revocation hearing that none of the men in her program are allowed to use the internet "unless they have written up some boundaries," and that she had informed Free of this restriction. Dr. Pinedo testified that she informed Free that he could access the internet at an agency such as WorkSource for job searches so long as he was monitored.

In August 2014, Free's CCO, Brian Dalton, received a report from the monitoring program on Free's computer, Covenant Eyes, indicating Free may have acted to evade the security levels on his computer. Dalton ordered Free to undergo a polygraph examination, however the test was inconclusive due to Free using "purposeful physical movements in an attempt to influence the results." When confronted Free became agitated, angry, and defensive.

After hearing these reports, Dr. Pinedo terminated Free from her program. Dr. Pinedo's termination report identified four treatment rules that Free violated: (1) failing to comply with all probation orders and treatment directives by attempting to circumvent Covenant Eyes, (2) violating a treatment rule-by accessing websites not approved by his CCO or the counselor, (3) failing to disclose completely and honestly his intent to access unapproved websites and by being secretive and uncooperative, and (4) omitting information from his treatment provider. Dr. Pinedo summarized:

> Mr. Free has demonstrated a persistent pattern of deviant thinking attitudes and behaviors that support potential reoffending. He was given an opportunity by the court to remain in community based treatment after termination from Mr. Satoran's sexual deviancy program. He clearly intended to manipulate and deceive his community corrections officer and this sexual deviancy treatment provider which would indicate no reduction in his potential for reoffending. Therefore, he has been terminated from this sexual deviancy treatment program on the basis that he is considered to be a High Risk for reoffense in the community.

The State petitioned for revocation of Free's SSOSA, asserting the following violations of community custody:

REPORT AND RECOMMENDATION - 5

1. Failure to abide by the instruction of the Department of Corrections and Sex Offender and Treatment Program Rules by accessing the internet for non-work related purposes on 8/1/14.

2. Accessing the internet without prior approval from 8/1/14 through 8/6/14.

3. Accessing private search (proxy) websites to circumvent Covenant Eyes between 8/1/14 and 8/10/14.

4. Using intentional movement during a Polygraph Test in an attempt to influence the results on 8/12/14.

5. Failing to comply with sexual deviancy treatment by being terminated by Dr. Pinedo on 8/8/14.

At the revocation hearing, Free informed the court that he could not find a sex offender treatment provider willing to accept him into treatment.

After hearing the evidence and reviewing the record, the trial court determined the State had proved the violations by "substantial evidence" and revoked the SSOSA. The court made the following findings:

1. The defendant failed to make reasonable progress in court ordered sexual deviancy treatment—having been terminated from the treatment program of William Satoran (1/27/14) and Dr. Myrna Pinedo (8/18/14).

2. Failing to abide by DOC and SOTP rules by accessing the Internet on 8/1/14.

3. Accessing the Internet without prior approval from 8/1/14 to 8/8/14.

4. Accessing private search (proxy) websites to circumvent Covenant Eyes.

The court found "that revocation of the suspended sentence is appropriate based upon any one of the violations above, as well as all violations." Free was directed to serve the remainder of his indeterminate sentence of 131 months to life.

(Dkt. 12, Ex. 3 at 1-7.)

Through counsel, petitioner appealed his conviction and sentence to the Washington Court of Appeals, raising the following claims for relief:

1. The conditions prohibiting Mr. Free from accessing the internet for any purpose other than a job search

REPORT AND RECOMMENDATION - 6

1  were not authorized by statute because they were not crime related.

2          2.  In violation of RCW 9.94A.70, the department failed to
   notify Mr. Free in writing that he was prohibited from using the
3  internet except for job searches.

4          3.  The conditions prohibiting Mr. Free from accessing the
   internet for any purpose other than a job search violated the First
5  Amendment.

6          4.  The trial court applied the wrong standard of proof in the
   hearing to revoke the [SSOSA] because the "substantial evidence"
7  standard is an appellate standard of review, not a trial court standard
   of proof.   On remand, due process requires application of the
8  preponderance standard.

9  (*Id.*, Ex. 4 at 1.)  Petitioner also filed his own statement of additional grounds, including the

10 following:  (1)  conditions imposed were unconstitutionally vague; (2) unreliable hearsay used in

11 violation of ER 802; (3)  exhibit 13 cannot be admitted under ER 901 as the chain of custody is

12 not properly established; (4) exhibit 13 also cannot be deemed reliable hearsay and introduced

13 under ER 803; (5) trial court abused its discretion in admitting the unreliable hearsay of exhibit

14 13; (6)  exhibit 12 also should not be admitted; (7) exhibits 14 and 15 should be excluded; and (8)

15 a preliminary hearing was not held (CP 80).  (*Id.*, Ex. 6.)

16     The Washington Court of Appeals affirmed. (*Id.*, Ex. 3.)  Petitioner, through counsel,

17 petitioned for review, raising the following claims:

18          1.  Does the standard of proof for revoking a SSOSA violate
   due process because it requires merely that the court be "reasonably
19 satisfied" that the defendant committed the alleged violation?  RAP
   13.4(b)(3), (4).
20
            2.  Did the conditions prohibiting Mr. Free from accessing
21 the internet for any purpose other than a job search violate his rights
   under the First Amendment?  RAP 13.4(b)(3), (4).
22
            3.   Were  the  conditions  imposed  upon  Mr.  Free
23 unconstitutionally vague?  RAP 13.4(b)(3).

REPORT AND RECOMMENDATION - 7

4.  Did the trial court err in admitting hearsay evidence at the revocation hearing?  RAP 13.4(b) (4).

5.  Does due process require a preliminary hearing prior to a revocation proceeding?  RAP 13.4(b)(3).

(*Id*., Ex. 9 at 1.)  The Washington Supreme Court denied the petition without comment.  (*Id*., Ex. 10.)  The United States Supreme Court subsequently denied a petition for certiorari.  (*Id*., Ex. 11.)

<u>DISCUSSION</u>

Petitioner raises the following grounds for relief in this habeas proceeding:

<u>Ground One</u>: The conditions imposed by Community Corrections Officer (CCO), Brian Dalton, prohibiting Mr. Free from accessing the internet for any purpose other than "work-related purposes," violated his First Amendment rights because they are:  1) vague; 2) overbroad; 3) not crime-related; and they 4) amounted to a "complete internet ban" – a) until Dr. Pinedo was consulted, b) until Covenant Eyes was installed, c) except for "work-related purposes," and d) until CCO Dalton was assigned as Mr. Free's monitor.

<u>Ground Two</u>:  The conditions imposed by CCO, Bryan Dalton, prohibiting Mr. Free from accessing the internet, and limiting access to the internet for any purpose other than "work-related purposes," are unlawful under state law and violated due process because: 1) the conditions are not crime-related; 2) the conditions are not based upon any individualized risk to the community nor tailored to Mr. Free's evaluation or to serve a compelling state interest; and 3) CCO Dalton failed to provide written notice of the conditions.

<u>Ground Three</u>:  The "substantial evidence" standard of proof the trial court used for removing Mr. Free's SSOSA, is insufficient to satisfy due process; it is a relic from the days when due process depended on the distinction between a privilege and a right.

<u>Ground Four</u>:  The State failed to provide notice that it would be using "failure to make reasonable progress in treatment" as an independent violation.  Revoking Mr. Free's SSOSA without such notice violated Mr. Free's due process rights.

<u>Ground Five</u>:   The State failed to conduct an administrative "preliminary hearing."  Failing to conduct a preliminary hearing violated Mr. Free's due process rights.

REPORT AND RECOMMENDATION - 8

Ground Six:  The introduction and admission of unreliable hearsay (State's exhibits 12, 13, 14 & 15), 1) without establishing a proper foundation, and 2) without conducting a good cause analysis, violated Mr. Free's due process & confrontation rights.

Ground Seven:  Under the "rule of completeness" the admission of CCO Dalton's chronos (State's Ex. 12) independently violated Mr. Free's due process & confrontation rights.

Ground Eight:  CCO Dalton's conveyance of unreliable, false, and misleading information to Dr. Pinedo and the trial court, that the Covenant Eyes report "supported that Mr. Free had attempted" to circumvent Covenant Eyes, independently violated due process.

Ground Nine:  Cumulative error deprived Mr. Free of a fair hearing in violation of due process.

(Dkt. 8.)

Respondent argues petitioner failed to properly exhaust all but one of his habeas claims and that those claims are now procedurally barred from this Court's review.  Respondent also argues petitioner's single exhausted claim for relief (ground three) should be denied on the merits. Petitioner rejects these contentions.

A.    Standards

1.    Exhaustion:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," and, therefore, requires "state prisoners [to] give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  *Accord Picard v. Connor*, 404 U.S. 270, 275 (1971) (the exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.") (internal quotation marks and citations omitted).  In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan*, 526 U.S. at 845).  "In turn, the state's highest court must have disposed of each claim on the merits."  *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).

When a petitioner fails to exhaust state court remedies and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  *See* RCW 10.73.090(1) (collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final); RCW 10.73.090(3)(b) (judgment final "[t]he date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction"); and RCW 10.73.140 (barring the filing of a successive collateral challenge).  Also, when a state prisoner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause, i.e. some external objective factor that prevented compliance with the procedural rule, and prejudice, i.e. that the claim has merit.  *Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 263 (1989).  Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional

REPORT AND RECOMMENDATION - 10

1    violation has resulted in the conviction of a defendant who is actually innocent. *Murray v. Carrier*,

2    477 U.S. 478, 495-96 (1986).

3          2.   <u>Habeas</u>:

4          Federal habeas corpus relief is available only to a person "in custody in violation of the

5    Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Under the

6    Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas corpus petition may

7    be granted with respect to any claim adjudicated on the merits in state court only if the state court's

8    decision was contrary to or involved an unreasonable application of clearly established federal

9    law, as determined by the United States Supreme Court. § 2254(d)(1).   A petition may also be

10   granted if the decision was based on an unreasonable determination of the facts in light of the

11   evidence presented in the state court proceeding. § 2254(d)(2).

12         Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ

13   only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

14   question of law, or if the state court decides a case differently than the Supreme Court has on a set

15   of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   Under

16   the "unreasonable application" clause, a federal court may grant the writ only if the state court

17   identifies the correct governing legal principle from the Supreme Court's decisions but

18   unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 412-13.

19         A state court's decision may be overturned only if the application of Supreme Court

20   holdings is "'"objectively unreasonable,"' not merely wrong; even 'clear error' will not suffice."

21   *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76

22   (2003)).   "A state court's determination that a claim lacks merit precludes federal habeas relief so

23   long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

REPORT AND RECOMMENDATION - 11

1  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664

2  (2004)).  The state court decision must be "so lacking in justification that there was an error well

3  understood and comprehended in existing law beyond any possibility for fairminded

4  disagreement."  *Id.*; *accord White*, 572 U.S. at 419.

5         In considering whether a state court decision was contrary to or an unreasonable application

6  of clearly established law or an unreasonable determination of the facts, this Court's review "is

7  limited to the record that was before the state court that adjudicated the claim on the merits."

8  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).  State court findings of fact are presumptively

9  correct in federal habeas proceedings, and the petitioner bears the burden of rebutting the

10  presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

11  B.    Petitioner's Grounds for Relief

12         1.    Ground one:

13         In his first ground for relief, petitioner argues conditions imposed by CCO Brian Dalton

14  and prohibiting him from accessing the internet for any purpose other than work-related purposes

15  violated his rights under the First Amendment.  Respondent maintains petitioner's failure to

16  exhaust because he did not present the same factual basis for this claim in state court.  That is, in

17  state court, petitioner challenged conditions imposed by his treatment providers, Satoran and Dr.

18  Pinedo, which differed from the conditions imposed by Dalton.

19         To exhaust, a federal habeas petitioner must have provided "the state courts with a 'fair

20  opportunity' to apply controlling legal principles to the facts bearing upon his constitutional

21  claim."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (quoting *Picard v. Connor*, 404

22  U.S. 270, 276-77 (1971)).  "It is not enough that all the facts necessary to support the federal claim

23  were before the state courts, or that a somewhat similar state-law claim was made."  *Id.* (internal

REPORT AND RECOMMENDATION - 12

1    citations omitted).  *See also Duncan*, 513 U.S. at 366 ("[M]ere similarity of claims is insufficient

2    to exhaust.")  In order to satisfy the exhaustion requirement, the petitioner "must have 'fairly

3    presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson*, 459

4    U.S. at 6 (quoting *Picard*, 404 U.S. at 275, 277-78).  At the same time, new factual allegations in

5    a federal petition do not render a claim unexhausted unless they "'fundamentally alter the legal

6    claim already considered by the state courts.'" *Belmontes v. Brown*, 414 F.3d 1094, 1117-18 (9th

7    Cir. 2005) (petitioner adequately exhausted claim where "essential factual and legal theories" were

8    the same as those presented in state courts) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)),

9    *rev'd on other grounds, Ayers v. Belmontes*, 549 U.S. 7 (2007).

10          In this case, petitioner's counsel argued to the Washington Court of Appeals that conditions

11   prohibiting petitioner from using the internet for anything other than a job search violated the First

12   Amendment.  (Dkt. 12, Ex. 4.)  The brief discussed conditions imposed by petitioner's treatment

13   providers, including, for example, Satoran's condition that petitioner could not access the internet

14   unless he was using it to find a job and first received clearance to do so, and Dr. Pinedo's condition

15   that petitioner never use the internet at home and could go online only at certain agencies for job

16   searches, while monitored.  (*Id.* at 6-14.)  Subsequently, in seeking review by the Washington

17   Supreme Court, counsel for petitioner did not name the source of challenged conditions, but did

18   specifically address Dr. Pinedo's condition prohibiting use of the interest for any purpose other

19   than a job search.  (*Id.*, Ex. 9 at 1, 14-16.)  Also, both the State in its responsive brief and the Court

20   of Appeals decision addressed petitioner's challenge as directed towards the internet restrictions

21   imposed by treatment providers.  (*Id.*, Exs. 3 & 7; *see also* Ex. 8 at 11-12.)

22          Petitioner maintained in the state courts and now argues in his federal habeas petition that

23   the conditions restricting his use of the internet violated his rights under the First Amendment.

REPORT AND RECOMMENDATION - 13

While his counsel's brief discussed the conditions imposed by his treatment providers, petitioner, in his pro se statement of additional grounds for relief, discussed conditions imposed by both Dr. Pinedo and Dalton, including Dalton's condition petitioner use the internet only for work-related purposes, and argued the conditions were unclear and unconstitutionally vague. (*Id.*, Ex. 6 at 1-3.) Also, in the petition for review to the Washington Supreme Court, counsel for petitioner did not specify the source of the conditions challenged and requested review of petitioner's pro se statement of additional grounds for relief, including his contention the differing conditions imposed by Dalton and his treatment providers were unconstitutionally vague. (*Id.*, Ex. 9 at 16-17.) Nor is it clear from the decision of the Court of Appeals that petitioner's claim was understood to be limited to only the limitations set by his treatment providers. (*See, e.g., id.*, Ex. 3 at 9 ("Free's primary arguments on appeal concern the trial court findings by revocation, as they relate to regulations on his use of the internet. Free argues (1) the treatment provider conditions limiting his access to the internet were not authorized by statute because they were not crime related, (2) the DOC condition limiting his internet access was not in writing, and (3) conditions limiting access to the internet violate Free's First Amendment rights.")) It is, accordingly, not clear a focus on internet-related conditions imposed by treatment providers (only using the internet for job searches) in the state court filings, and not the internet-related conditions imposed by CCO Dalton (only using the internet for work-related purposes), shows a failure to fairly present to the state courts the substance of the federal habeas corpus claim.

The Court may, in any event, also address the substance of this claim on the merits. 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") In so doing, the Court concludes petitioner fails to show the decision of the state courts

REPORT AND RECOMMENDATION - 14

was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

The Washington Court of Appeals rejected petitioner's arguments challenging the trial court's findings for revocation as they related to the regulations on his use of the internet. (Dkt. 12, Ex. 3.) The Washington Supreme Court likewise rejected and therefore adjudicated the claim on the merits for purposes of 28 U.S.C. § 2254(d). *See Harrington*, 562 U.S. at 98-100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."; adjudication on the merits is presumed even where the state court issues a summary denial "unaccompanied by an opinion explaining the reasons relief has been denied."); *accord Parker v. Matthews*, 567 U.S. 37, 45 (2012) ("This claim was rejected on the merits by the Kentucky Supreme Court (albeit without analysis) and therefore receives deferential review under the AEDPA standard.") (citing *Harrington*, 562 U.S. 86).

The state court explained its rejection of petitioner's claim as follows:

> Free argues that the reason he was terminated from treatment was impermissible as it was primarily because of his violation of the treatment providers' internet restrictions. We disagree.
>
> At the outset, we note there is currently no Washington case law or statute that restricts a treatment provider's ability to regulate a participant's use of the internet. In <u>State v. O'Cain</u>, this court reversed an internet restriction set by the trial court for not being "crime-related;" although we specifically clarified that the decision "does not preclude control over internet access being imposed as part of sex offender treatment if recommended after a sexual deviancy evaluation." 144 Wn. App. 772, 775, 184 P.3d 1262 (2008). However, we do not explore this issue further. In this case, while both treatment providers imposed limitations on Free's internet access, and both faulted him for violating these limitations, their primary reasons for terminating Free were based on his failure to participate in the program and his continued dishonesty.

REPORT AND RECOMMENDATION - 15

Free's SSOSA required that he engage in sex offender treatment with Satoran for three years and that he abide by all conditions of treatment and follow all of Satoran's treatment recommendations. Free signed a treatment contract with Satoran that required honesty, required he participate fully in treatment, and required that he not access the internet without permission. Satoran terminated Free for nonpayment, for failing to complete his homework, failing to actively participate, and for exhibiting a poor attitude toward treatment.  After hearing testimony from Satoran, the trial court agreed:  "I think any way you look at it from Mr. Satoran's testimony and the documents that he's filed in this case, Mr. Free did not make satisfactory progress in treatment."

Despite his termination from Satoran's treatment program, Free was given a second chance to reenter treatment with Dr. Pinedo.  As a condition of a 90-day probationary period, Free agreed to enroll with Dr. Pinedo, and comply with all treatment conditions without complaint, negotiation, or argument. Dr. Pinedo's conditions included the requirement for complete and honest disclosure.

When Dr. Pinedo terminated Free from her program, she did consider his unauthorized use of the internet, however, only because this use of the internet was indicative to his lack of commitment and honesty. Dr. Pinedo found Free's attempts to circumvent internet safety controls constituted a failure to completely and honestly participate in the program. Dr. Pinedo concluded that Free "has demonstrated a persistent pattern of deviant thinking, attitudes and behaviors that support potential reoffending."   After hearing testimony and reviewing documents, the trial court agreed:

> One of the core principles, what's necessary to be successful and make reasonable progress in a SSOSA is to be honest, honest with your CCO and honest with your treatment provider, and that was clearly not the case with Mr. Free. And so I don't find that he made reasonable progress in treatment with Dr. Pinedo as well, and that's supported by substantial evidence.

Thus, we hold the trial court did not abuse its discretion in revoking Free's suspended sentence based on his failure to make progress in treatment.

We need not address the subsequent claims challenging the remaining findings.  We draw a direct analogy to a court's imposition of an exceptional sentence on multiple grounds. In that

REPORT AND RECOMMENDATION - 16

circumstance, "an exceptional sentence may be upheld on appeal even where all but one of the trial court's reasons for the sentence have been overturned." State v. Gaines, 122 Wn.2d 502, 512, 859 P.2d 36 (1993). Remand is only necessary "where it is not clear whether the trial court would have imposed an exceptional sentence on the basis of only the one factor upheld." Gaines, 122 Wn.2d at 512; See also State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). In this case, the trial court left no ambiguity in specifically finding "revocation of the suspended sentence is appropriate based upon any one of the violations above."

(Id. at 9-11 (footnote citing to Report of Proceedings omitted).)

Petitioner now takes issue with findings by Dalton and others that he violated conditions associated with his use of the internet and argues those conditions violated his First Amendment rights. Habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, petitioner's habeas challenge is properly directed to the revocation of his suspended sentence following his termination from treatment.[1] As reflected above, the state court found the decision to terminate petitioner's treatment resulted primarily from his failure to participate in treatment and continued dishonesty, not due to his violations of internet restrictions. Petitioner makes no showing that that decision was contrary to or involved an unreasonable application of clearly established federal law. He is not, as such, entitled to habeas relief in relation to this claim.

2.    Ground Two:

Respondent argues petitioner failed to exhaust his second ground for relief, in which he alleges the internet-related restrictions violated his right to due process, by failing to present this

---

[1] Challenges to conditions of confinement are brought in a 42 U.S.C. § 1983 civil rights action, not a § 2254 habeas petition challenge to the legality of custody. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus [;] ... requests for relief turning on circumstances of confinement may be presented in a § 1983 action.") (internal citations omitted).

REPORT AND RECOMMENDATION - 17

claim in his petition for review to the Washington Supreme Court.    Petitioner maintains respondent's argument is "nonsensical" because "[d]ue process is fundamental and ever present in the background of all of [his] arguments and the law itself." (Dkt. 21 at 9-10.)  He states that cases and authorities relied on in the petition for review reference and depend on due process.

The exhaustion rule requiring presentation of a claim to the state's highest court is well-settled. *See, e.g., Murray v. Schriro*, 882 F.3d 778, 807 (9th Cir. 2018) ("To satisfy the exhaustion requirement, a petitioner 'must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review . . .')") (quoting *Baldwin*, 541 U.S. at 29).  *Accord James*, 24 F.3d at 24 (a complete round of the state's established review process includes presentation of a petitioner's claims to the state's highest court).  Petitioner must fairly present the substance of his claim to the highest state court. *Anderson*, 459 U.S. at 6.  He must "alert the state courts to the fact that he was asserting a claim under the United States Constitution[,]" and does not satisfy the exhaustion requirement through "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan*, 513 U.S. at 366, and *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).  Because petitioner did not present a claim to the Washington Supreme Court that the internet-related restrictions violated his constitutional right to due process, he did not exhaust this ground for relief.

3.    Grounds Four through Nine:

Respondent similarly asserts petitioner did not exhaust grounds four, eight, and nine in light of his failure to present those claims in the supreme court petition for review.  Respondent asserts petitioner did not exhaust grounds five, six, and seven given the failure to present those claims as federal constitutional violations in the supreme court.  Petitioner argues he fairly

presented all of these claims for consideration by the state supreme court because his counsel fully

integrated in the petition his pro se statement of additional grounds for relief.  (*See* Dkt. 12, Ex. 9

at i and 16-17.)   The Court must determine whether this integration as alleged by petitioner

satisfied the exhaustion requirement.

In *Baldwin*, 541 U.S. at 30-32, the United States Supreme Court observed federal habeas

corpus law does not require a state court judge to read through lower court opinions or briefing to

discover the existence of a federal claim.   "[O]rdinarily a state prisoner does not 'fairly present' a

claim to a state court if that court must read beyond a petition or a brief (or a similar document)

that does not alert it to the presence of a federal claim in order to find material, such as a lower

court opinion in the case, that does so."  *Id*.

In some circumstances, incorporation by reference of a prior court document may satisfy

the exhaustion requirement.   In *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)

(internal citations omitted), the Ninth Circuit explained fair and full presentation satisfying

exhaustion occurs with presentation of a federal constitutional claim "(1) to the proper forum, (2)

through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim[.]"

In *Insyxiengmay*, the petitioner presented to the state supreme court three federal constitutional

claims in an appendix consisting of a full copy of his personal restraint petition, and devoted the

body of his motion for discretionary review to the state appellate court's dismissal on the grounds

of timeliness.  *Id*.  Noting the appendix contained the arguments as to the constitutional claims,

the Court found clear presentation of those claims as federal issues to the state supreme court.  The

Court distinguished cases involving arguments relying on documents never presented to the higher

court.  *Id*. at 668-69.  *Insyxiengmay*, in the appendix filed in the state supreme court, "presented

extensive argument in support of all three claims as well as citations to the requisite authority and

REPORT AND RECOMMENDATION - 19

1   to relevant parts of the record." *Id*. at 669.

2   This Court has found exhaustion where a petitioner's motion seeking discretionary review

3   identifies an issue for review and attaches briefs or other documents to the petition that contain the

4   arguments in support of the issue. *See, e.g., Silva v. Holbrook*, No. C16-0378, 2016 WL 8235139

5   at *6 (W.D. Wash. Nov. 2, 2016), *adopted*, 2017 WL 568822 (W.D. Wash. Feb. 13, 2017) (in

6   motion for discretionary review petitioner asserted entitlement to discharge based on "sixteen (16)

7   discrete issues raised in the operative pleadings herein[,]" and attached copies of his personal

8   restraint petition and supplemental petition); *Wiggin v. Miller-Stout*, No. C14-1474, 2015 WL

9   2137319 *7 (W.D. Wash. Mar. 20, 2015) ("[P]etitioner arguably put the Washington Supreme

10  Court on notice of his claims by reasserting them in a summary fashion in his motion for

11  discretionary review and by specifically incorporating into his motion all of the arguments

12  contained in his personal restraint petition."), *adopted*, 2015 WL 2137439 (W.D. Wash. May 6,

13  2015). *See also Miller v. Quinn*, No. 07-35531, 2009 WL 117985 at *1 (9th Cir. Jan. 9, 2009)

14  (finding exhaustion where petition identified a claim, but did not refer to federal constitutional

15  issues, but relevant law addressing federal constitutional issues was discussed extensively in

16  attachments to petition).

17  Petitioner's exhaustion argument does not rest on any documents attached to his petition.

18  The only attachment to the petition consisted of the decision of the state court of appeals.  (Dkt.

19  12, Ex. 9, Appx. A.)  The petition did, however, include counsel's request that the state supreme

20  court grant review of the issues petitioner raised in his pro se statement of additional grounds for

21  review.  (*Id*., Ex. 9 at i and 16-17.)  Counsel further described the pro se arguments rejected by the

22  state court of appeals and on which petitioner sought review as including:  (1) that the conditions

23  imposed were unconstitutionally vague, with different understandings of the conditions by CCO

REPORT AND RECOMMENDATION - 20

Dalton and the treatment providers; (2) that the trial court improperly admitted unreliable hearsay in denying petitioner's motion to exclude the Covenant Eyes report (exhibit 13); (3) that the court improperly admitted Dalton's chronological event notes (exhibit 12) because it was "'prepared for court'" and violated the rule of completeness; (4)  that the court should have excluded exhibits 14 and 15, "which were printouts from privacy protection (proxy server) websites", and mischaracterized the exhibits, which had hearsay and chain-of-custody problems; and (5) that "due process requires a preliminary hearing, not just a final fact-finding hearing, and that he was improperly denied a preliminary hearing."  (Dkt. 12, Ex. 9 at 17.)

a.    Grounds four, eight, and nine:

Petitioner alleges violations of his right to due process through the revocation of his SSOSA without providing notice the State would be using "failure to make reasonable progress in treatment" as an independent violation (Ground Four); Dalton's conveyance of unreliable, false, and misleading information to Dr. Pinedo and the trial court that the Covenant Eyes report supported the conclusion he had attempted to circumvent that program (Ground Eight); and cumulative error (Ground Nine).  However, the petition for review does not raise or even mention any of these claims.  In failing to fairly present these claims for consideration by the highest state court, petitioner did not exhaust grounds four, eight, or nine.  These claims are now time-barred and petitioner sets forth neither cause, nor prejudice excusing the procedural default.

b.    Ground Five:

Petitioner's fifth ground for relief asserts a due process violation through the failure to conduct an administrative preliminary hearing.  As respondent observes, petitioner did not, in the petition for review, claim the failure to conduct such a hearing violated a federal constitutional provision.  The petition instead requested review of petitioner's prior pro se argument that "due

REPORT AND RECOMMENDATION - 21

1    process requires a preliminary hearing, not just a final fact-finding hearing, and that he was

2    improperly denied a preliminary hearing."   (Dkt. 12, Ex. 9 at 17.)  The mere reference to "due

3    process" does not satisfy the exhaustion requirement.  *Hiivala*, 195 F.3d at 1106.

4         However, even assuming the reference sufficed, this claim fails on the merits.   The

5    Washington Court of Appeals rejected petitioner's argument "he was owed both a preliminary

6    hearing and a revocation hearing" in order to satisfy the requirements set by the United States

7    Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471 (1972).  (Dkt. 12, Ex. 3 at 16.)  The court

8    observed that *Morrissey* requires only:

9              Written notice of the claimed violations of parole, disclosure to the
               parolee of evidence against him, an opportunity to be heard in
10             person and to present witnesses and documentary evidence, the right
               to confront and cross-examine adverse witnesses, a neutral and
11             detached hearing body, and a written statement by the fact finders
               as to the evidence relied on and the reasons for revoking parole.

12

13   (*Id.* (quoted and cited sources omitted).)

14        As respondent observes, petitioner received a full fact-finding hearing before the state

15   court, while represented by counsel, prior to the SSOSA revocation.  Petitioner does not identify

16   and the Court does not find any support for a contention that, under these circumstances, the

17   absence of a preliminary hearing violated the minimal due process requirements as set forth in

18   *Morrissey*.  Because petitioner does not show the state court's ruling was contrary to or an

19   unreasonable application of clearly established federal law, he is not entitled to habeas relief.

20             c.    Grounds six and seven:

21        In his sixth ground for relief, petitioner asserts a violation of his right to due process and

22   his right to confrontation through the introduction and admission of unreliable hearsay in trial court

23   exhibits 12 through 15 without conducting a good cause analysis.  In his seventh ground for relief,

REPORT AND RECOMMENDATION - 22

he asserts that, under the "rule of completeness", admission of Dalton's chronological event notes (exhibit 12) independently violated his due process and confrontation rights. Respondent correctly observes that petitioner did not present these grounds for relief as federal constitutional violations in the petition to the state supreme court. Counsel for petitioner depicted these challenges as objections to the admission of the exhibits under state court rules of evidence. (*See* Dkt. 12, Ex. 9 at 17.) Petitioner therefore cannot be said to have properly exhausted these grounds for relief.

Petitioner would not, moreover, be entitled to habeas relief in relation to these claims. In addressing these challenges, the Washington Court of Appeals found:

> Hearsay evidence is admissible at revocation hearings if good cause outweighs the defendant's right to confront and to cross-examine witnesses. State v. Nelson, 103 Wn.2d 760, 765, 697 P.2d 579 (1985). "The minimal due process right to confront and cross-examine witnesses is not absolute. Courts have limited the right to confrontation afforded during revocation proceedings by admitting substitutes for live testimony, such as reports, affidavits and documentary evidence." Dahl, 139 Wn.2d at 686. "Hearsay evidence should be considered only if there is good cause to forgo live testimony." Dahl, 139 Wn.2d at 686; Nelson, 103 Wn.2d at 765. Good cause exists when procuring the witness would be difficult and expensive and the State can show that the proffered evidence was demonstrably reliable or clearly reliable. See Dahl, 139 Wn.2d at 686 (quoting Nelson, 103 Wn.2d at 765). "Unreliable hearsay may not be the sole basis for revocation of probation." Nelson, 103 Wn.2d at 765.

> In this case, we hold good cause outweighs Free's right to confront the creator of the report. Covenant Eyes is a commonly used monitoring system for the DOC. The State adequately showed the Covenant Eyes report was reliable by having Dalton testify to his experience with their accuracy and how commonly they are used. Expecting the DOC to procure the specific person who created the report for Covenant Eyes would be unnecessarily difficult and expensive.

> We also hold good cause existed to allow Dalton to reference his probationary notes taken during the time he worked with Free. Other courts have found "evidence from the court files and state probation reports" though hearsay, were "'reliable and obviously

REPORT AND RECOMMENDATION - 23

1   sufficient to satisfy the court that appellant had violated the terms of
    his probation.'" <u>Nelson</u>, 103 Wn.2d at 764-65 (quoting <u>United</u>
2   <u>States v. Miller</u>, 514 F.2d 41 (9th Cir. 1975)).  As the Washington
    Supreme Court clarified,
3
4           where it not only appears that the reports of program staff
            therapists contain factual assertions about defendant's use
5           of the program solely to avoid prison and his failure to
            expend sufficient time and energy to succeed in the
6           program, but also that these assertions are corroborated by
            the statements of probationer and other witnesses, such
            hearsay report evidence is demonstrably reliable.
7
8   <u>Nelson</u>, 103 Wn.2d at 765.  Such is the case here.  Although Dalton
    was present to testify to his conversations with Free and Dr. Pinedo,
9   the evidence provided additional clarification as to the times and
    dates of the conversations, information that was corroborated by the
10  witnesses.  Regarding Free's argument that the evidence should not
    be admitted under the "rule of completeness," that objection was not
11  made at the trial court, and we do not consider it here.
            . . .
12
            Free's only remaining argument is that the trial court's ruling
13  was based entirely on "unreliable hearsay."  Here, the trial court
    heard several witnesses, including Free's CCO and both of Free's
14  treatment providers, Satoran and Dr. Pinedo.  Free's argument is
    essentially that Dalton "misrepresented" the facts, i.e., the use of the
15  proxy server printouts, and that the allegations were
    "unsubstantiated."  However, Free was given the opportunity to
16  cross-examine these witnesses and present his own defense.  "We
    will not substitute our judgment for the trial court's, weigh the
17  evidence, or adjudge witness credibility." <u>Greene v. Greene</u>, 97 Wn.
    App. 708, 714, 986 P.2d 144 (1999).

18  (Dkt. 12, Ex. 3 at 14-16.)

19      The state court found admission of the exhibits permissible under state law.  "[I]t is not the

20  province of a federal habeas court to reexamine state-court determinations on state-law questions."

21  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal habeas court may not prescribe

22  evidentiary rules for the states." *Swan v. Peterson*, 6 F.3d 1373, 1382 (9th Cir. 1993).  Federal

23  habeas corpus relief is available only to a person "in custody in violation of the Constitution or

REPORT AND RECOMMENDATION - 24

laws or treaties of the United States." § 2254(a).)  In other words, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted).  State court procedural and evidentiary rulings are not subject to federal habeas review unless such rulings "violate[] federal law, either by infringing upon a specific constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (cited sources omitted).

Petitioner does not show the state court's adjudication of claims challenging the evidentiary rulings were contrary to or an unreasonable applicable of clearly established federal law.  That is, he fails to identify Supreme Court precedent supporting a contention the evidentiary rulings violated federal law, either by infringing a constitutional or statutory provision or by depriving him of his right to due process.  Indeed, while he takes issue with the conclusions reached and identifies constitutional principles allegedly violated, his contention of errors in the evidentiary rulings under state law and in the violations of his rights to due process and confrontation are wholly conclusory.  (*See* Dkt. 8 at 31, 33.)  Nor is it apparent admission of the Covenant Eyes report, Dalton's probationary notes, and the proxy server printouts, offered along with the testimony of Dalton, Satoran, and Dr. Pinedo and providing for the ability to conduct cross-examination and present a defense, could be said to amount to the denial of a fundamentally fair trial guaranteed by due process.  Petitioner, for these reasons, fails to demonstrate his entitlement to habeas relief in relation to grounds six and seven.

/ / /

REPORT AND RECOMMENDATION - 25

1    4.    <u>Ground Three</u>:

2    In his third ground for relief, petitioner contends the "substantial evidence" standard of

3  proof used for revoking his SSOSA is insufficient to satisfy due process, and "a relic from the days

4  when due process depended on the distinction between a privilege and a right." (Dkt. 8 at 22 (case

5  of text altered).)  He notes state courts need only be "reasonably satisfied" an individual breached

6  a condition in order to find a violation, and argues the finding of the Washington Supreme Court

7  in *In re the Pers. Restraint of Schley*, 191 Wn.2d 278, 421 P.3d 951 (2018), providing for

8  application of the "preponderance of the evidence standard" to revocation of a drug offender

9  sentencing alternative (DOSA), must also apply to SSOSA revocation proceedings.

10    In *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), the Supreme Court concluded  that the

11  minimal due process requirements for parole revocation proceedings set forth in *Morrissey*, 408

12  U.S. at 489, also applied to probation revocation proceedings.  That is, prior to a final revocation,

13  due process requires:  (a) written notice of claimed violations; (b) disclosure of evidence against

14  individual; (c) opportunity to be heard in person and to present witnesses and documentary

15  evidence; (d) right to confront and cross-examine adverse witnesses, unless there is a finding of

16  good cause for not allowing confrontation; (e) a neutral hearing body; and (f) a written statement

17  by the factfinders as to the evidence relied on and reasons for the revocation.  *Gagnon*, 411 U.S.

18  at 786.  In some circumstances, there is also a right to counsel.  *Id*. at 787-91.

19    In this case, the State gave petitioner notice of the claimed violations and disclosed the

20  evidence against him, and the trial court held a four-day SSOSA violation hearing.  (Dkt. 12, Exs.

21  12 & 13.)  The court took testimony from petitioner's providers, Dalton, and petitioner's family

22  members, considered evidence, and heard argument from the State and counsel for petitioner.

23  Satoran explained petitioner's termination from treatment as due to the failure to turn in weekly

REPORT AND RECOMMENDATION - 26

sexual impulse charts and mood logs, denial of sexual impulses, lack of sufficient participation in group, failure to complete homework, and non-payment of fees.  (*Id*., Ex 12 at 123-55; *see also id*., Ex. 14.)  Dr. Pinedo explained her program prohibited participants' use of the internet without written boundaries and that petitioner's boundaries limited him to use of the internet only at job agencies.  (*Id*., Ex. 12 at 170-73.)  She terminated petitioner from treatment because he accessed the internet at his home without her permission, circumvented the Covenant Eyes program installed in his home and violated the rules of his probation officer in so doing, was dishonest in failing to tell the group about or otherwise report his internet use, and did not engage in treatment. (*Id*. at 173-75.)  Dr. Pinedo believed petitioner posed too high of a risk to remain in her treatment given his mental health issues and the risk he posed to the community.  (*Id*. at 175-76, 183-86; *see also id*., Ex. 15.)  Dalton testified that, contrary to his directives, petitioner accessed the internet prior to the installment of Covenant Eyes and accessed websites not related to job searches.  (*Id*., Ex. 12 at 217-22, 238-40.)

After hearing the testimony and argument, the trial judge stated the standard of proof to support the violation finding was "substantial evidence" and found the minimal due process requirements under *Morrisey*/*Gagnon* had been satisfied.  (*Id*., Ex. 13 at 333-34.)  The judge  also found each allegation of violation supported by substantial evidence and found violations for both violating DOC rules and failing to make reasonable progress in treatment, and noted the evidence of petitioner's failure to be honest with his CCO and treatment providers.  (*Id*. at 335-39.)  In the written revocation order, the court stated that revocation of the suspended sentence was appropriate based on any as well as all of the violations.  (*Id*., Ex. 2.)

In considering the claims set forth in petitioner's third ground for relief, the Washington Court of Appeals explained its decision as follows:

REPORT AND RECOMMENDATION - 27

"The revocation of a suspended sentence is not a criminal proceeding, but rather an extension of the original criminal conviction." McCormick, 166 Wn.2d at 699. "An offender facing a revocation of a suspended sentence has only minimal due process rights because the trial has already occurred and the offender was found guilty beyond a reasonable doubt." McCormick, 166 Wn.2d at 700 (citing State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999)).

A SSOSA may be revoked at any time during the period of community custody if there is sufficient proof to reasonably satisfy the court that the offender (1) has violated a condition of the suspended sentence or (2) is failing to make satisfactory progress in treatment. McCormick, 166 Wn.2d at 705 (emphasis added).

At trial, the State argued, "ultimately, the court is only being asked to find whether there is substantial evidence to prove the violation certainly on a much lesser standard than proof beyond a reasonable doubt." The trial court then stated it was applying the "substantial evidence" standard in making its rulings. Free is correct that "substantial evidence" is the appellate standard of review. However, a finding by the trial court that "substantial evidence" supports each violation, though not the exact language of the standard, adequately demonstrates that the trial court found "sufficient proof to reasonably satisfy the court." Thus, we find that any error in the use of this language was harmless.

Free next argues that the trial court should have applied the "preponderance of the evidence" standard in determining whether the SSOSA should be revoked. Free argues that the U.S. Supreme Court decision Morrissey v. Brewer, 408 U.S. 471, 484, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), and this court's decision In re Pers. Restraint of McKay, 127 Wn. App. 165, 169, 110 P.3d 856 (2005), require this heightened evidentiary standard. We disagree.

The Washington Supreme Court addressed the added due process requirements as proscribed by Morrissey in State v. Dahl, 139 Wn.2d 678, 990 P.2d 396 (1999), where the court added several minimal requirements in order to satisfy due process. "These requirements exist to ensure that the finding of a violation of a term of a suspended sentence will be based upon verified facts." Dahl, 139 Wn.2d at 683 ([incorporating holding of and citing to] Morrissey, 408 U.S. at 484); See also McCormick, 166 Wn.2d at 700. Since then, our Supreme Court has declined to reconsider the "sufficient proof to reasonably satisfy the court" evidence requirement. See McCormick, 166 Wn.2d 689 (holding "a SSOSA

sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court."); See also Dahl, 139 Wn.2d at 705 (holding "an offender's SSOSA may be revoked at any time if a court is reasonably satisfied.").

Free invites this court to presume that those decisions "accidentally" relied on the same evidence requirement. We decline their invitation. We are bound by the decisions of our Supreme Court, and "overruling a prior decision ... is not a step that should be taken lightly." Keene v. Edie, 131 Wn.2d 822, 831, 935 P.2d 588 (1997). We will not abandon an established rule absent a showing that the rule is "incorrect and harmful." In re Stranger Creek and Tributaries in Stevens County, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Free has failed to meet that burden.

(Dkt. 12, Ex. 3 at 12-14 (footnotes omitted).)

Petitioner does not here show the state court's adjudication of this claim was contrary to or an unreasonable applicable of clearly established federal law. As reflected above, the state court found harmless error in the trial judge's application of the substantial evidence standard because the findings of substantial evidence to support the violations alleged adequately demonstrated a finding of "sufficient proof to reasonably satisfy" the court under the applicable Washington State standard. *McCormick*, 166 Wn.2d at 705 ("A SSOSA sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment.") This matter of state law, much like the standard applied in DOSA revocation hearings under *In re Schley*, 191 Wn.2d 278, is not reviewable on habeas.[2] Nor does petitioner otherwise demonstrate the existence of a

---

[2] In *In re Schley*, the decision pointed to by petitioner in ground three, the Washington Supreme Court specifically held that, at DOSA revocation hearings, "if revocation is based on . . . clinical staff administratively terminating a person from treatment, the Department [of Corrections] has the burden to prove the facts that served as a basis for that decision by a preponderance of the evidence." *Id.* at 292. The court also distinguished the DOSA revocation procedures from those at issue with revocation of a SSOSA: "A SSOSA can be revoked only by a judge in superior court, whereas a DOSA can be removed by a nonlawyer hearing officer in a Department of Corrections proceeding." *Id.* at 289-90 (citations omitted).

REPORT AND RECOMMENDATION - 29

due process violation or any basis for habeas relief. As respondent observes, there is no United States Supreme Court precedent establishing the standard of proof for violations at sentence revocation hearings for state offenders. Instead, the *Morissey/Gagnon* minimum due process requirements apply. Petitioner does not show his entitlement to habeas relief in relation to those requirements.

<u>CERTIFICATE OF APPEALABILITY</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes petitioner is not entitled to a COA.

<u>CONCLUSION</u>

The Court recommends the habeas petition (Dkt. 8) be DENIED, and this case DISMISSED. An evidentiary hearing is not required as the record conclusively shows petitioner is not entitled to relief. A proposed Order accompanies this Report and Recommendation.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions

REPORT AND RECOMMENDATION - 30

calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**May 21, 2021**</u>.

DATED this <u>26th</u> day of April, 2021.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 31